IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:                            )
NATIONAL HERITAGE FOUNDATION,     )
INC.,                             )
          Debtor.                 )
_____  )      1:13cv01180 (LMB/TCB)
                                  )
JOHN R. BEHRMANN and NANCY        )      09-10525-BFK
BEHRMANN,                         )
          Appellants,             )
                                  )
v.                                )
                                  )
NATIONAL HERITAGE FOUNDATION,     )
INC.,                             )
          Appellee.               )

_____

In re:                            )
NATIONAL HERITAGE FOUNDATION,     )
INC.,                             )
          Debtor.                 )
_____  )      1:13cv01181(LMB/TCB)
                                  )
JOHN R. BEHRMANN and NANCY        )      09-10525-BFK
BEHRMANN,                         )
          Appellants,             )
                                  )
v.                                )
                                  )
NATIONAL HERITAGE FOUNDATION,     )
INC.,                             )
          Appellee.               )

_____

CONSOLIDATED WITH

_____

In re:                            )
NATIONAL HERITAGE FOUNDATION,     )
INC.,                             )
          Debtor.                 )

|  |  |  |
|---|---|---|
| ——————————— | ) | 1:13cv01182 (LMB/TCB) |
|  | ) |  |
| JONATHAN D. MILLER, | ) | 09-10525-BFK |
|     Appellant, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| NATIONAL HERITAGE FOUNDATION, | ) |  |
| INC., | ) |  |
|     Appellee. | ) |  |

CONSOLIDATED WITH

|  |  |  |
|---|---|---|
| In re: | ) |  |
| NATIONAL HERITAGE FOUNDATION, | ) |  |
| INC., | ) |  |
|     Debtor. | ) |  |
| ——————————— | ) | 1:13cv01183 (LMB/TCB) |
|  | ) |  |
| DANIEL J. SCHENDZIELOS, | ) | 09-10525-BFK |
|     Appellant, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| NATIONAL HERITAGE FOUNDATION, | ) |  |
| INC., | ) |  |
|     Appellee. | ) |  |

MEMORANDUM OPINION

Before the Court are multiple appeals from decisions of the bankruptcy court. In the first appeal, Civil Action No. 1:13cv01180, Appellants John and Nancy Behrmann ("the Behrmanns"), who donated funds to Appellee National Heritage Foundation, Inc. ("NHF" or "Debtor"), appeal the bankruptcy court's decision denying their Renewed Motion for Leave to pursue litigation against NHF in the Central District of

California.  In the second appeal, Civil Action No. 1:13cv01181,

which consolidated the appeals of the Behrmanns and their

counsel, Jonathan D. Miller and his law firm, Nye, Peabody,

Stirling, Hale & Miller, LLP, ("Miller"), and Daniel J.

Schendzielos and his law firm, Schendzielos & Associates, LLC,

("Schendzielos") (collectively "Appellants"), the appellants

attack the bankruptcy court's decision holding all of them

jointly and severally in contempt.  Independent of those appeals

are NHF's motion for sanctions against all of the appellants

under Fed. R. Bankr. P. 8020 for raising allegedly frivolous

issues in these appeals and appellants' cross-motion for

sanctions.  For the reasons that follow, the bankruptcy court's

decisions will be affirmed, NHF's motion for sanctions will be

denied without prejudice, and appellants' cross-motion for

sanctions will be denied.

I.   BACKGROUND

NHF is a nonprofit, public charity incorporated in Georgia

and headquartered in Falls Church, Virginia.  Bankr. Dkt. No.

578.[1]  NHF's officers and board of directors include Dr. John T.

Houk, II (Chairman and CEO); his wife, Dr. Marian M. Houk (COO);

his son, John T. Houk (President); his daughter, Jan H. Ridgely

(Vice President); and his daughter-in-law, Julie L. Houk ("the

---

[1] Citations to the docket of the bankruptcy court will be
indicated as "Bankr. Dkt. No. ___."

Houk Family"). Id. NHF is a "sponsoring organization" that maintains donor advised funds ("DAFs"). Id.; see also 26 U.S.C. § 4966(d). DAFs are funds or accounts "owned and controlled by a sponsoring organization." Id. Donors to DAFs receive a dollar-for-dollar income tax deduction for their donations. Although donors such as the Behrmanns give up control over the funds in exchange for that favorable tax benefit, they have "advisory privileges with respect to the distribution or investment of amounts held" in the DAFs. 26 U.S.C. § 4966(d)(2)(A).

Through NHF, the Behrmanns created the Highbourne Foundation, a DAF intended to fund scholarships for low-income students. Bankr. Dkt. No. 832-1. The Behrmanns and NHF enjoyed a 15-year relationship with no record of dissatisfaction until January 24, 2009, when NHF filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. Bankr. Dkt. No. 1. That filing was precipitated by a September 2008 jury verdict in Texas against NHF, in which $6.2 million in damages was awarded against NHF.[2]

On behalf of the Highbourne Foundation, the Behrmanns filed both original and amended claims against NHF in the Chapter 11

---

[2] As explained during the oral argument of these appeals, NHF's insurance carrier declined coverage, resulting in NHF incurring significant legal fees as well as the multimillion-dollar judgment. NHF sought bankruptcy protection as a result.

proceeding, seeking to recover $649,138.35 they claimed NHF "appropriated . . . from the Highbourne Foundation" when those monies were placed in NHF's operating account. Claim Nos. 142-1, 142-2; Bankr. Dkt. Nos. 341, 657, 811. The Behrmanns also alleged that "these monies were subsequently paid to one or more lenders in partial satisfaction of the Debtor's secured indebtedness" and that "[t]his action robbed monies that the Behrmanns had been induced to contribute for charitable purposes of the ability to be used for the purposes for which they had been provided." Id. NHF objected to the Behrmanns' claims.

On October 13, 2009, NHF proposed its Fourth Amended and Restated Plan of Reorganization of the Debtor ("Plan") that included the sections that are relevant to these appeals. Section 7.19 released NHF's officers and directors, including the Houk family, from any claims relating to their actions before NHF filed for bankruptcy protection (the "Release Provision"). Bankr. Dkt. No. 665. Section 7.21 required that any claims against NHF's officers and directors, again including the Houk family, for actions relating to their conduct in the bankruptcy proceeding, be approved in advance by the bankruptcy court (the "Exculpation Provision").[3] Id. Lastly, section 7.18

---

[3] The Exculpation Provision of the Plan is modelled in part after the Supreme Court's decision in Barton v. Barbour, 104 U.S. 126 (1881), which held "that before another court may obtain

discharged claims against NHF for activity occurring before the
Plan's effective date; that is, October 16, 2009, which is the
date of the bankruptcy court's order confirming the Plan (the
"Discharge Provision").[4]  Id.

The Behrmanns objected to confirmation of the Plan,
challenging its "good faith" and arguing that

> [t]his reorganization evidences a concerted effort by
> the Houk family to patch and continue -- for the
> family's   collective   benefit   and   profit   --
> reprehensible   practices   of   soliciting   charitable
> donations via ruse and deception. . . . [C]entral to
> [NHF's] fraudulent "business" is the solicitation of
> charitable   donations   based   upon   material
> misrepresentations and omissions.

Bankr. Dkt. No. 585.  On October 16, 2009, the bankruptcy court
confirmed the Plan over the Behrmanns' objection after a hearing
in which the Behrmanns and their bankruptcy counsel
participated.  Bankr. Dkt. No. 687 ("Confirmation Order").  In
the Confirmation Order, the bankruptcy court found that the Plan
had been proposed in good faith.  Id.  The Confirmation Order

---

subject-matter jurisdiction over a suit filed against a receiver
for acts committed in his official capacity, the plaintiff must
obtain leave of the court that appointed the receiver."
McDaniel v. Blust, 668 F.3d 153, 156 (4th Cir. 2012).  The
Barton doctrine also applies to suits against bankruptcy
trustees.  Id. at 157.  Because the Plan's Exculpation Provision
is intended to provide the same protections to NHF's officers
and directors as Barton provides to bankruptcy trustees, the
Houk family are treated as trustees for purposes of the analysis
here.

[4] Section 7.20 implemented the Release and Exculpation
provisions.  Bankr. Dkt. No. 665.

included the Release, Exculpation, and Discharge provisions discussed above. Id.

On October 23, 2009, the Behrmanns appealed the Confirmation Order to the district court, explicitly challenging the good faith of NHF and the Houk family in proposing the Plan and, specifically, the propriety of the Release and Exculpation provisions. Behrmann v. Nat'l Heritage Found., Inc., No. 1:10cv40 CMH/IDD (E.D. Va. 2010).

On November 13, 2009, while that appeal was pending, the Behrmanns moved for a stay of the Confirmation Order to enable them to file a civil complaint against the Houk family. Bankr. Dkt. No. 732. The bankruptcy court granted the motion on December 17, 2009, staying those provisions of the Confirmation Order "as would bar the movants from commencing—solely in order to toll the running of the statute of limitations—a civil action against any of the debtor's officers, directors, or employees in a court of appropriate jurisdiction for causes of action arising out of payments made by the movants to the debtor." Bankr. Dkt. No. 800. The bankruptcy court explicitly limited the scope of the Order by providing that "no other provision of the confirmation order or plan is stayed other than the provisions specifically referenced in this order." Id. In accordance with that Order, the Behrmanns filed a civil action against the Houk

7

family, but not NHF, in this court on January 22, 2010.
Behrmann v. Houk, No. 1:10cv64 AJT/TRJ (E.D. Va. 2010).   That
action was in turn stayed pending resolution of the Behrmanns'
appeal of the Confirmation Order.

In June 2010, while their appeal of the Confirmation Order
was pending before the district court, the Behrmanns settled
their dispute with NHF and withdrew their claim from the
bankruptcy proceedings after NHF agreed to contribute
$590,000.00 to a charity (or charities) of the Behrmanns' choice
in exchange for a release of all claims against it.   Bankr. Dkt.
Nos. 948, 1023-3.   The settlement agreement did not release any
claims against the Houk family.   Bankr. Dkt. No. 1023-3.

On August 17, 2010, the district court affirmed the
bankruptcy court's entry of the Confirmation Order.   The
Behrmanns moved to stay the Confirmation Order, but both the
district court and the Fourth Circuit denied the Behrmanns'
request.   On March 16, 2011, the Behrmanns dismissed their
pending civil action against the Houk family in the district
court "only as the result of the compulsion of the October 16,
2009 Order (the 'Confirmation Order') of the Bankruptcy Court
confirming the Fourth Amended Plan of Reorganization."

In their appeal of the Confirmation Order to the Fourth
Circuit, the Behrmanns again challenged the good faith of NHF

and the Houk family in proposing the Plan and again asserted their theory that the Houk family confiscated donated funds by using them to pay off debts in the bankruptcy proceeding. Behrmann v. Nat'l Heritage Found., 663 F.3d 704 (4th Cir. 2011).

The Behrmanns were partially successful on appeal. Although the Fourth Circuit rejected their "broadside" attack on the good faith of the Plan, it found that the record did not allow it to assess "whether NHF's circumstances entitle it to the benefit of the" Release and Exculpation provisions. Id. at 710-13. Accordingly, the Fourth Circuit vacated the district court's decision affirming the Release and Exculpation provisions and remanded the case to allow the bankruptcy court "to set forth specific factual findings supporting its conclusions." Id. at 713.

After the case was remanded, the bankruptcy court held a status conference on March 6, 2012. Bankr. Dkt. No. 997. At that hearing, the Behrmanns' bankruptcy counsel, Glenn Merrick, asked the court to vacate the Release and Exculpation provisions in light of the Fourth Circuit's decision. Id. Concerned about the prospect of "piecemeal" litigation, the bankruptcy court asked Merrick directly whether or not the Behrmanns would "run off to state court and sue" the Houk family if it granted his request. Bankr. Dkt. No. 1047 at 14-17. Merrick replied,

"[N]o, there is no plan or intent to go file an action against [NHF's] principals prior to this court ruling.  That's the direct answer to your question."  Id.  Merrick later reported this exchange to Mr. Behrmann, as well as to appellants Miller and Shendzielos.  Bankr. Dkt. No. 1064.

Despite Merrick's response, on June 28, 2012 – while the bankruptcy court was still considering the remanded issues and without first seeking leave to lift the automatic stay or leave to file a civil action against the debtor – Miller and Schendzielos filed suit on behalf of the Behrmanns against several defendants, including both NHF and the Houk family in the Central District of California.  Behrmann v. Goldstein, No. 2:12cv5636 DMG/CW (C.D. Cal. June 28, 2012) ("California Action"); see also Bankr. Dkt. No. 1043-2 ("Original Complaint").  Among the claims in the Original Complaint were allegations that the Behrmanns' Highbourne Foundation donations had been improperly confiscated when NHF made payments to creditors during the bankruptcy proceedings.[5]  Neither NFH, the Houk family, nor the bankruptcy court was aware of the

---

[5] The Behrmanns filed the Original Complaint in their individual capacities and as assignees of the claims of Dr. Robert Griego and Dr. Carole Griego; John Goodson; and Terry P. Gillett and Brendan A. Gillett, all of whom were contributors to other DAFs sponsored by NHF (the "Assignors").  Original Complaint at ¶¶ 3-8.

California action because the Behrmanns never served the
Original Complaint.

On August 27, 2012, in a written opinion, the bankruptcy
court struck the Plan's Release Provision but upheld the
Exculpation Provision, explaining that the Exculpation Provision
was "limited to acts or omissions taken in connection with the
bankruptcy case itself" and "does not purport to release any
pre-petition claims against the officers or directors."  Bankr.
Dkt. Nos. 1015, 1016 ("Reinstatement Order").  The Discharge
Provision of the Plan, which was incorporated in the
Confirmation Order, remained undisturbed.

On October 22, 2012, again without obtaining a lift of the
automatic stay or leave of the bankruptcy court, the Behrmanns
filed an amended complaint in the California action, which
included, as defendants, both NHF and the Houk family.  Bankr.
Dkt. No. 1043-3 ("Amended Complaint").[6]  The Amended Complaint
included a disclaimer that the Behrmanns were not bringing
claims against NHF for conduct that pre-dated July 1, 2010,
which was the effective date of the Behrmanns' settlement
agreement with NHF.  Amended Complaint at ¶¶ 49, 186, 216, 223,
232, 239.  The Amended Complaint also provided that "[n]one of

---

[6] The Amended Complaint added two new assignors, William P.
O'Connell and Jinan O'Connell, dropped Goodson as an assignor,
and, unlike the Original Complaint, omitted the claim that the
assignors had not received notice of the bankruptcy proceedings.

the Plaintiffs are bringing this claim against NHF or the Houk

Defendants for the period of January 24, 2009 through October

16, 2009 (the reorganization period), until the bankruptcy

court, this Court, or a competent Court of Appeals, authorizes

such action, at which point, this claim shall be deemed

pursued." Id.; see also ¶¶ 194, 202.

Notwithstanding this "disclaimer language," the Amended

Complaint contained a number of allegations concerning NHF's

conduct that pre-dated both the Behrmanns' settlement of their

claims against NHF and the date of the Confirmation Order. The

Amended Complaint also included a section titled "Specific Facts

Involving Bankruptcy Fraud". Id. at ¶¶ 135-50

On the same day they filed the Amended Complaint, the

Behrmanns filed in the bankruptcy court a Motion for Leave to

Pursue Litigation Claims Against Members of the Houk Family for

Claims Arising During the Bankruptcy Exculpation Period, to

which they attached a copy of the already-filed Amended

Complaint. Bankr. Dkt. No. 1035 ("Motion for Leave"). This was

the first time NHF, the Houk family, and the bankruptcy court

had notice of the California action, which had been pending for

nearly four months.

No party appealed the bankruptcy court's decision to

maintain the Exculpation Provision in the Plan; however, NHF

12

appealed the decision to strike the Release Provision.  Nat'l
Heritage Found., Inc. v. Behrmann, No. 1:12cv1329 AJT/JFA (E.D.
Va. 2012).  On October 25, 2012, as a result of that appeal, the
bankruptcy court stayed its Order striking the Release Provision
while NHF appealed that decision.[7]  Bankr. Dkt. No. 1039.  As a
result of the court's granting the stay, the Houk family
remained protected from suit for pre-petition conduct involving
NHF.

     Within two weeks of receiving notice of the Amended
Complaint, specifically on November 6, 2012, NHF demanded that
the claims in the California action against NHF and the Houk
family be dismissed.  Appellants refused, although they later
agreed to move for a stay of the litigation as to the Houk
family, but not as to NHF.[8]

     On November 14, 2012, NHF filed a Motion for Contempt and
Sanctions ("Motion for Contempt") against the Behrmanns, in
which it argued that the Behrmanns had violated the Discharge
and Exculpation provisions of the Plan by bringing the
California action.  For relief, NHF requested that the Court
"require the Behrmanns to dismiss the California Action with

---

[7] On April 3, 2013, the district court affirmed the bankruptcy
court but continued the stay while NHF appealed that decision to
the Fourth Circuit, where it is still pending.

[8] The district court in California entered the entire action on
February 6, 2013.

prejudice against NHF and its Directors and Officers, and impose sanctions in the form of both compensatory and punitive damages." Bankr. Dkt. No. 1043.

On December 4, 2012, after conducting a hearing on NHF's Motion for Contempt and the Behrmanns' Motion for Leave, the bankruptcy court denied the Behrmanns' motion without prejudice, expressly allowing them to renew the motion if the district court affirmed the decision striking the Release Provision and declined to stay the decision pending appeal to the Fourth Circuit. Bankr. Dkt. No. 1056. The Behrmanns did not appeal this decision.

As to NHF's Motion for Contempt, on December 20, 2012, the bankruptcy court ordered both the Behrmanns as well as the counsel who filed the California action, appellants Miller and Schendzielos, to show cause why they should not be held in contempt of court for filing the Original and Amended complaints. Although NHF's Motion for Contempt had been directed only at the Behrmanns, the bankruptcy court sua sponte found that the prima facie showing of contempt applied to appellants Miller and Schendzielos, as well, because they had filed the Original and Amended complaints on behalf of the Behrmanns, and those filings were the basis for issuing the

14

Order to Show Cause.  Bankr. Dkt. Nos. 1071 ("Order to Show Cause").

An evidentiary hearing to address the Motion for Contempt and the Order to Show Cause was scheduled for March 5, 2012; however, in response to appellants' motion requesting more time to respond, the hearing was continued to May 1, 2013.  Bankr. Dkt. No. 1097.

On April 9, 2013, the Behrmanns filed a Renewed Motion for Leave to Pursue Litigation Claims Against Members of the Houk Family for Claims Arising During the Bankruptcy Exculpation Period, to which they attached a Proposed Second Amended Complaint.  Bankr. Dkt. No. 1143 ("Renewed Motion for Leave"); Bankr. Dkt. No. 1180 ("Proposed Second Amended Complaint").  As had the Amended Complaint, the Proposed Second Amended Complaint included several allegations of bankruptcy fraud, specifically accusing the Houk family of deceiving DAF donors and the bankruptcy court during the bankruptcy proceedings and proposing the Plan in bad faith.  See Proposed Second Amended Complaint at ¶¶ 206-63.

On May 1 and 2, 2013, the bankruptcy court held an evidentiary hearing during which it heard testimony from appellants Miller and Schendzielos; the Behrmanns' bankruptcy counsel Merrick; NHF's counsel David Goroff and Brittany Nelson;

15

and expert witnesses Benjamin Ackerly and Bruce Henry.   Bankr.
Dkt. Nos. 1175, 1176.

On June 21, 2013, the court denied the Behrmanns' Renewed
Motion for Leave, after finding that they were unable to
establish the prima facie case required to obtain leave to sue
the Houk family for matters relating to the administration of
the Debtor's estate.   Specifically, the court found that the
bankruptcy fraud allegations in the Proposed Second Amended
Complaint were barred by the doctrine of res judicata because
they amounted to a renewed attack on the good faith of the Plan,
a claim the Behrmanns had already fully litigated and lost
before the bankruptcy, district, and appellate courts.   The
court also found that the allegations in the Proposed Second
Amended Complaint were frivolous because they could not
plausibly allege any injury arising out of the Houk family's
conduct during the bankruptcy proceedings.   Bankr. Dkt. No. 1186
("Leave Order").

On the same day, the bankruptcy court entered an Opinion
and Order finding all of the appellants in contempt of court,
based on their filing the Original and Amended complaints in
violation of the Confirmation Order (including the Discharge
Provision), the Reinstatement Order (including the Exculpation
Provision), and 11 U.S.C. § 1141(d)(1).   Bankr. Dkt. No. 1187

16

("Contempt Order").  The court also found that the filing of the Original Complaint was a violation of the automatic stay provision in 11 U.S.C. § 362(a)(1).

The court's decision denying the Behrmanns leave to pursue claims against the Houk family and NHF is the subject of the Behrmanns' appeal in Civil Action No. 1:13cv01180; the decision holding all appellants in contempt is the subject of the appeals consolidated in Civil Action No. 1:13cv01181.

## II.  DISCUSSION

Under 28 U.S.C. § 158(a), a district court has jurisdiction to consider appeals from final judgments, orders, and decrees of a bankruptcy court.  A district court sitting as an appellate court reviews the bankruptcy court's conclusions of law de novo.  See In re Merry-Go-Round Enters., Inc., 400 F.3d 219, 224 (4th Cir. 2005) (citing Three Sisters Partners, L.L.C. v. Harden (In re Shangra-La, Inc.), 167 F.3d 843, 847 (4th Cir. 1999)).  Factual findings of the bankruptcy court are reviewed for clear error.  Id.; Fed. R. Bankr. P. 8013.  Findings of fact will be overturned as "clearly erroneous" if consideration "of the entire record leaves [the reviewing court] with the definite and firm conviction that a mistake has been committed."  Harman v. Levin, 772 F.2d 1150 (4th Cir. 1985).  "[D]ue regard shall be given to the opportunity of the bankruptcy court to judge the

17

credibility of the witnesses." Fed. R. Bankr. P. 8013.

Finally, decisions committed to the discretion of the bankruptcy

court are reviewed for abuse of discretion. Robbins v. Robbins

(In re Robbins), 964 F.2d 342, 345 (4th Cir. 1992).

### A. Appeal in Civil Action No. 1:13cv01180

In this appeal, the Behrmanns attack the bankruptcy court's

Order denying their Renewed Motion for Leave to file a Second

Amended Complaint in the California action, which continued to

include claims against the Houk family and NHF.

The abuse of discretion standard applies to a bankruptcy

court's decision to deny a motion for leave to sue a trustee,[9]

see, e.g., In re USA Baby, Inc., 520 F. App'x 446, 448 (7th Cir.

2013); In re VistaCare Grp., LLC, 678 F.3d 218, 224 (3d Cir.

2012); In re Marinkovic, 350 F. App'x 156, 158 (9th Cir. 2009);

In re Beck Indus., Inc., 725 F.2d 880, 889 (2d Cir. 1984);

however, "such permission ordinarily should be granted unless it

is clear that the claim is without foundation.'" McDaniel v.

Blust, 668 F.3d 153, 157 n.1 (4th Cir. 2012) (quoting Anderson

v. United States, 520 F.2d 1027, 1029 (5th Cir. 1975)).

In deciding whether to grant leave to sue a trustee, a

bankruptcy court must first determine whether a prospective

---

[9] Although members of the Houk family are not trustees, as
officers and directors of NHF they are treated as trustees for
purposes of this analysis.

plaintiff has established a <u>prima facie</u> case against the trustee.  If a <u>prima facie</u> case is established, the court must then balance the interests of the parties.  <u>In re Cutright</u>, 2012 WL 1945703, at *10-*11 (Bankr. E.D. Va. 2012) (citing <u>Kashani v. Fulton (In re Kashani)</u>, 190 B.R. 875 (B.A.P. 9th Cir. 1995)).  "The <u>prima facie</u> case requirement requires a 'pre-screening' of the allegations by the appointing court to determine if the plaintiff can present adequate grounds upon which to proceed against the trustee in another forum."  <u>Id.</u> at *10.

The bankruptcy court found that the Behrmanns failed to satisfy the <u>prima facie</u> requirement for two reasons.[10]  First, the court found that the bankrtupcy fraud allegations included in the Proposed Second Amended Complaint were barred under the doctrine of <u>res judicata</u> because on appeal, both the district and appellate courts had found that the Plan was proposed in good faith.  Leave Order at 5-8.  Second, the court found that it was "just frivolous for the Behrmanns to say that they were somehow defrauded in connection with the bankruptcy case,"

---

[10] Because it found that the Behrmanns failed to establish a <u>prima facie</u> case, the bankruptcy court did not proceed to balance the parties' interests.  Both the Behrmanns and NHF advance arguments as to how the balance should be struck, <u>see</u> Appellants' Opening Brief at 16-18; Brief of Appellee National Heritage Foundation, Inc. at 21-24; Appellants' Reply Brief at 7-10; however, those arguments will not be considered, given the bankruptcy court's sound conclusion that the Behrmanns have not established a <u>prima facie</u> case.

because "the Behrmanns cannot plausibly allege that they were
injured by reason of anything that occurred during the course of
the bankruptcy case." Id. at 5, 8-10.

1. Res Judicata

The doctrine of res judicata bars a plaintiff from re-
litigating claims already considered by a court. See, e.g.,
United States v. Mumford, 630 F.2d 1023, 1027 (4th Cir. 1980).
The res judicata bar applies when "(1) a judgment on the merits
in a prior suit resolv[es] (2) claims by the same parties or
their privies" and a plaintiff files (or attempts to file) "(3)
a subsequent suit based on the same cause of action." Aliff v.
Joy Mfg. Co., 914 F.2d 39, 42 (4th Cir. 1990).

The bankruptcy court applied the res judicata bar after
finding that the Proposed Second Amended Complaint effectively
alleged "that the Officers and Directors deceived the Donors and
the Court in connection with the filing of the case and
confirmation of the Debtor's Plan." Leave Order at 7 (citing
Proposed Second Amended Complaint at ¶¶ 206-63).[11]  Based on
those allegations in the Proposed Second Amended Complaint, the
court concluded that "[t]he Behrmanns' current claim, that the
bankruptcy case was a sham, is nothing more than an attempt to

---

[11] In its analysis, the bankruptcy court reviewed the allegations
in the Behrmanns' Amended and Proposed Second Amended Complaints
and properly concluded that the allegations in both were the
same or substantively similar. See Leave Order at 7.

re-litigate what was litigated and lost" before the bankruptcy court in 2009, the district court in 2010, and the Fourth Circuit in 2011, when these courts rejected the Behrmanns' attack on the bona fides of the bankruptcy proceedings and the Plan.  Id.

The Behrmanns first argue that the application of res judicata is incorrect because the two causes of action do not arise out of the same transaction or the same core of operative facts.  Appellants' Opening Brief ("Appellants' Br.") at 13.  In this argument, the Behrmanns try to distinguish their previous, unsuccessful challenge to the good faith of the Plan by arguing that the conduct at issue in that challenge arose out of the Houk family's pre-petition conduct, whereas the California action is based on the Houk family's post-petition conduct, specifically focusing on conduct involving the "confiscation" of appellants' "monies" during the bankruptcy proceedings.  Id.; Appellants' Reply Brief ("Reply Br.") at 2-3 ("Appellants allege that during NHF's bankruptcy case, and without notice to Appellants, the Houk Family wrongfully collaborated to embezzle monies that Appellants had contributed to their Foundation.") (emphasis in original).  In other words, the Behrmanns argue that their attack in the bankruptcy court on the good faith of the Plan and the confiscation claims they wanted to raise in the

Second Amended Complaint "involve different transactions[] and different operative facts," which makes the claims "wholly distinct" and, therefore, not barred by res judicata. Appellants' Br. at 13.

The bankruptcy court correctly determined that the bankruptcy fraud claims in the Proposed Second Amended Complaint "arise out of the same transaction or series of transactions or the same core of operative facts" as the claims raised in the Behrmanns' unsuccessful challenge to the Plan's good faith. Among the allegations in the Proposed Second Amended Complaint were claims that one "facet" of NHF and the Houk family's RICO "Enterprise" was NHF's voluntary petition in the bankruptcy court, and that "[d]uring the ensuing 'reorganization' proceedings, NHF and the Houk Defendants converted to NHF absolute ownership and control of approximately $175 million in monies, property and assets that had been contributed to NHF-sponsored Foundations." Proposed Second Amended Complaint at ¶ 11. The Proposed Second Amended Complaint also alleged that NHF and the Houk family concealed information regarding donor assets from the bankruptcy court, and misrepresented NHF's ownership interest and control over DAF assets. Id. at ¶¶ 14, 16-20; see also id. at 206-14.

The Proposed Second Amended Complaint's allegation that DAF assets were wrongly confiscated is premised solely on NHF and the Houk family's alleged fraud on the bankruptcy court,[12] and the Behrmanns' attempt to distinguish their challenge to the Plan's good faith and their confiscation claim is therefore wholly unavailing. The Behrmanns' attempt to distinguish their challenge to the Plan's good faith based on "pre-petition" conduct from claims based on "post-petition" conduct, that is, the illegitimate confiscation of funds, is also unpersuasive in light of the Proposed Second Amended Complaint's repeated allegations that both before and after NHF filed for bankruptcy, NHF and the Houk family conspired to defraud the bankruptcy court in order to "seize" donor assets.

In sum, the Behrmanns' unsuccessful appeal of the Plan's good faith and the allegations in the Proposed Second Amended Complaint that NHF and the Houk family improperly used the bankruptcy proceedings to confiscate donor funds arise out of the same series of transactions and core operative facts – that is, the activities of the Houk family and NHF in the bankruptcy

---

[12] This fraud on the bankruptcy court appears to be based on NHF's alleged misrepresentations to the court regarding the relationship of DAF donors and DAF funds, given the September 2008 jury verdict in Texas state court, which awarded damages against NHF. For the reasons explained below, however, NHF's representation to the bankruptcy court that DAF donors have no right, title, or interest in the DAF's assets once the donation is made was an accurate description of the law in this circuit.

proceedings. Accordingly, the bankruptcy court did not err in concluding that the allegations in the Proposed Second Amended Complaint are barred as a matter of law under the doctrine of res judicata.

The Behrmanns also argue that res judicata does not apply because their challenge to the Plan's good faith was not, in fact, finally decided on appeal. They base this argument on the Fourth Circuit's finding that the Release and Exculpation provisions of the Plan were not supported by sufficient specific factual findings, and the bankruptcy court's subsequent determination on remand that the Release Provision (but not the Exculpation Provision) was not necessary for implementation of the Plan. Appellants' Br. at 13-14 ("[I]t cannot be said that the prior confirmation challenge (involving the 'good faith' of incorporating into the Plan an unjustified non-debtor release) was finally decided against Appellants.").

The record fully supports the bankruptcy court's conclusion that the Behrmanns' "good faith" challenge to the Plan was fully adjudicated on the merits, and that the Fourth Circuit very clearly decided the good faith issue when it explicitly "reject[ed]" the Behrmanns' "contention that the Confirmed Plan fails to satisfy the good faith requirement." Behrmann, 663 F.3d at 710. Although the Fourth Circuit vacated two provisions

of the Plan and remanded the case for further fact finding as to
just those two provisions, the good faith issue was fully
resolved.  Accordingly, under the doctrine of res judicata, the
Behrmanns are barred from re-litigating the Plan's good faith.

## 2. Frivolousness

The bankruptcy court also determined that the claims in the
Proposed Second Amended Complaint as to the Houk family and NHF
were frivolous because the Behrmanns cannot establish that they
were injured by reason of NHF and the Houk family's conduct in
connection with the bankruptcy case.  After stressing that the
Behrmanns had withdrawn their claim against NHF in the
bankruptcy proceedings upon entering into a settlement
agreement, the bankruptcy court found itself "at a loss" to
understand how the Behrmanns could claim they were harmed by any
fraud or misrepresentation during the course of the bankruptcy
case when the Behrmanns had already "parted with the entirety of
their donated funds well before the bankruptcy case was ever
filed."  Leave Order at 9.

The Behrmanns argue that the bankruptcy court misread the
Proposed Second Amended Complaint, which they describe as
specifically alleging that misconduct by the Houk family during
the course of the bankruptcy proceedings resulted in a
substantial monetary loss, that is, the confiscation of DAF
funds.  Appellants' Br. at 15-16; Reply Br. at 6.  NHF responds

that the Behrmanns parted with ownership of the funds in question when they made their contributions to the Highbourne Foundation; consequently, when the bankruptcy proceedings began, "there was nothing belonging to them that could be 'taken' from them." Appellee's Br. at 20.

It is well established in this circuit that a donor to a DAF has no right, title, or interest in the DAF's assets following the donation. See Behrmann, 663 F.3d at 707 n.1 ("DAFs are funds that are owned and controlled by a sponsoring charitable organization. . . . Donors may make non-binding recommendations regarding how their donations are invested or distributed, but otherwise relinquish all right and interest in the donated assets." (emphasis added)); Nat'l Heritage Found. Inc. v. Behrmann, No. 1:12cv01329 AJT/JFA, 2013 WL 1390822, at *1 (E.D. Va. Apr. 3, 2013) ("When a donor contributes to a particular DAF, the donor must relinquish all right, title, and interest in the assets, in exchange for a 100% dollar for dollar tax deduction at the time the donation is made." (emphasis added) (citing 26 U.S.C. § 4966(d)(2))); Nat'l Heritage Found., Inc. v. Philadelphia Indem. Ins. Co., No. 1:12cv00447 TSE/IDD, 2012 WL 5331570, at *1 (E.D. Va. Oct. 25, 2012) ("The donors may advise the sponsoring foundation how they would like their

contributions distributed or invested, but those recommendations are not binding on the sponsoring foundation.").

The Behrmanns cite three cases in an attempt to support their contention that the bankruptcy court incorrectly found that they had no ownership interest in the Highbourne Foundation's assets.[13] Reply Br. at 6-7. None of these cases is from this circuit, and none involved DAFs, which afford a unique tax advantage by providing donors with a dollar-for-dollar deduction. Without a legal claim to ownership in the assets of the Highbourne Foundation, the Behrmanns can have no claim

---

[13] The first, In re Parkview Hosp., 211 B.R. 619, 630 (Bankr. N.D. Ohio 1997), quotes Comment F to the Restatement (Second) of Trusts § 348 for the general proposition that "[w]here property is given to a charitable corporation without restrictions as to the disposition of the property, the corporation is under a duty . . . not to divert the property to other purposes but to apply it to one or more of the charitable purposes for which it is organized." The second, St. Joseph's Hosp. v. Bennett, 22 N.E.2d 305, 308 (N.Y. 1939), stands for the proposition that a charitable corporation may not "receive a gift made for one purpose and use it for another, unless the court applying the cy pres doctrine so commands," notwithstanding that the making of a gift does not technically create a fiduciary relationship between a donor and a trustee (as the "trustee and beneficiary are one"). Finally, in Hobbs v. Bd. of Educ. of N. Baptist Convention, 253 N.W. 627, 635 (Neb. 1934), the court decided that donations made by the Baptist Education Society to the endowment fund of Grand Island College "constituted a charitable trust, regardless of the fact that they were made direct to the college; and that the college did not acquire absolute title to the principal of such fund but only to the income thereof." Importantly, none of these cases addressed DAFs under the relevant provisions of the Internal Revenue Code, which have special features and are, therefore, distinguishable from mere contributions to a charitable organization.

against NHF or the Houk family for any alleged confiscation of those assets, either before or after NHF filed for bankruptcy. When the Behrmanns accepted the special tax advantages derived from contributing to a DAF, they gave up their right to make the kinds of claims they raise in the Proposed Second Amended Complaint. Accordingly, the bankruptcy court correctly determined that the claims in the Proposed Second Amended Complaint were frivolous and did not abuse its discretion when it denied the Behrmanns' Renewed Motion for Leave. For these reasons, that decision will be affirmed.

### B. Consolidated Appeals in Civil Action No. 1:13cv01181

In their consolidated appeals, the Behrmanns, Miller, and Schendzielos, respectively, attack the bankruptcy court's decision to hold all of them in contempt and to impose joint and several sanctions on them. For the reasons that follow, that decision will also be affirmed.

#### 1. Standard of Review

Under 11 U.S.C. § 105(a), a bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. "No provision of [the Bankruptcy Code] providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination

28

necessary or appropriate to enforce or implement court orders or rules." Id.

The Fourth Circuit has seen "no reason to read into [Section 105] anything other than its plain meaning that a court of bankruptcy has authority to issue any order necessary or appropriate to carry out the provisions of the bankruptcy code," including contempt orders. In re Walters, 868 F.2d 665, 669 (4th Cir. 1989); see also In re Kestell, 99 F.3d 146, 149 (4th Cir. 1996). A bankruptcy court's decision to impose sanctions for contempt is within its sound discretion and is, therefore, reversible only if that discretion has been abused. See Walters, 868 F.2d at 666.

### 2. Analysis

Civil contempt must be shown by "clear and convincing" evidence (1) of the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) that the decree was in the movant's "favor"; (3) that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) that the movant suffered harm as a result. In re Grand Jury Subpoena (T-112), 597 F.3d 189, 202 (4th Cir. 2010); Ashcraft v. Conoco, Inc., 218 F.3d 288, 301 (4th Cir. 2000). "Willfulness is not an element of civil contempt." In

29

re Gen. Motors Corp., 61 F.3d 256, 258 (4th Cir. 1995) (citing
McComb v. Jacksonville Paper Co., 336 U.S. 187, 191 (1949)).

Appellants do not dispute that they had actual or
constructive notice of the Confirmation and Reinstatement
orders.  There is also no dispute that both orders were in NHF's
"favor."  Accordingly, the relevant issues to be resolved are
whether appellants' filing of the Original and Amended
complaints knowingly violated valid orders of the bankruptcy
court and the automatic stay and whether appellants' violations,
if any, harmed NHF.

Before addressing the relevant issues, two frivolous
arguments by appellants Miller and Schendzielos need discussion.
Schendzielos argues that because NHF moved for sanctions only
against the Behrmanns, the bankruptcy court's exercise of
contempt jurisdiction over him and Miller through the Order to
Show Cause violated their constitutional due process rights.
Opening Brief of Appellants Daniel J. Schendzielos and
Schendzielos & Associates, LLC, ("Schendzielos Br.") at 13-15.
There is no merit to this argument.  The bankruptcy court is
empowered to "sua sponte[] tak[e] any action or mak[e] any
determination necessary or appropriate to enforce or implement
court orders or rules." 11 U.S.C. § 105(a).  Both Miller and
Schendzielos were served with the Order to Show Cause and then

had five months to prepare for an evidentiary hearing, during which time they both conducted discovery.  Both also fully participated in the two-day hearing.  Therefore, they received the notice and the opportunity to be heard guaranteed under the Due Process Clause of the United States Constitution.

Miller and Schendzielos also frivolously argue that the Noerr-Pennington doctrine immunizes the Behrmanns from any finding of contempt because the filing of the Original and Amended complaints in California is "petitioning activity." Brief of Appellants Jonathan D. Miller, Nye, Peabody, Stirling, Hale & Miller, LLP ("Miller Br.") at 34-35; Schendzielos Br. at 28-29.  "The Noerr-Pennington doctrine guarantees citizens their First Amendment right to petition the government for redress without fear of antitrust liability."  Baltimore Scrap Corp. v. David J. Joseph Co., 237 F.3d 394, 398 (4th Cir. 2001) (emphasis added).  The doctrine has no application here, where the liability appellants seek to avoid is not antitrust liability, but a finding of contempt.

### a. Filing of the Original Complaint

The bankruptcy court found that the filing of the Original Complaint without leave of the bankruptcy court violated the Discharge Provision of the Confirmation Order, as well as 11

31

U.S.C. § 1141(d)(1)[14] and the automatic stay under 11 U.S.C. §

362(a).  Contempt Order at 25-27.

    The Discharge Provision, included in both the Plan and the

Confirmation Order, provides that

> [u]pon the entry of the Confirmation Order, any holder
> of the discharged Claim or interest will be precluded
> from asserting against the Debtor or Reorganized
> Debtor or any of its assets or properties any other or
> further claim or interest based on any document,
> instrument, act, omission, transaction or other
> activity of any kind or nature that occurred before
> the Effective Date. The Confirmation Order will be a
> judicial determination of discharge of all liabilities
> of the Debtor, and Reorganized Debtor will not be
> liable for any Claims or interests and will only have
> the obligations as are specifically provided for in
> this Plan.

Bankr. Dkt. No. 665.  Appellants do not dispute that the

Discharge Provision precludes the Behrmanns from bringing any

action against NHF for conduct occurring before October 16,

2009, which is the date when the Confirmation Order was entered.

---

[14] "Except as otherwise provided in this subsection, in the plan,
or in the order confirming the plan, the confirmation of a plan—

> (A) discharges the debtor from any debt that arose
> before the date of such confirmation, and any debt of
> a kind specified in section 502(g), 502(h), or 502(i)
> of this title, whether or not—
> > (i) a proof of the claim based on such debt is filed
> > or deemed filed under section 501 of this title;
> > (ii) such claim is allowed under section 502 of this
> > title; or
> > (iii) the holder of such claim has accepted the
> plan; and
> (B) terminates all rights and interests of equity
> security holders and general partners provided for by
> the plan."

Appellants also acknowledge that the Original Complaint contained allegations relating to NHF's conduct occurring before October 16, 2009. See Original Complaint at ¶¶ 36-44, 53-61 ("The NHF Bankruptcy Filing and Proceedings"). Instead, they erroneously argue that the Confirmation Order was not a valid order when they filed the Original Complaint because "the Confirmation Order remained uncertain in the face of the judgment of the Fourth Circuit." Appellants' Opening Brief ("Behrmanns Br.") at 8-10; Miller Br. at 19-22 ("Appellants cannot be held in contempt for filing the Initial Complaint because it was done during a period that the bankruptcy court itself described as an 'admittedly gray area' following remand."); Schendzielos Br. at 16-20.

When read in context, it is clear that the bankruptcy court's reference to a "gray area" related only to the two provisions of the Plan that had been vacated by the Fourth Circuit. See Bankr. Dkt. No. 1047 at 15 ("So there are practical problems to doing that while we're in this admittedly gray area of a remand and a determination of whether the release provisions should be included [in the Confirmation Order] or not.").

The bankruptcy court correctly rejected appellants' argument because the Discharge Provision was not challenged by

the Behrmanns in their appeal of the Confirmation Order and was,
therefore, clearly in effect when appellants filed the Original
Complaint.   Contempt Order at 25.   The bankruptcy court also
correctly found that appellants acknowledged as much when they
argued during their appeals before the district and appellate
courts that the Release and Exculpation provisions were
severable from the Plan.   See Bankr. Dkt. No. 665 at Section
12.2 ("Severability");[15] see also Behrmann, 663 F.3d at 714
(stating that "the Confirmed Plan expressly provides that any
clause may be severed should it be determined to be
unenforceable, which suggests that the plan would remain viable
absent" the Release and Exculpation provisions.).   At the
hearing before the bankruptcy court on the Motion for Contempt,
the Behrmanns' bankruptcy counsel also acknowledged that the
Fourth Circuit did not vacate the Confirmation Order in its
entirety.   Bankr. Dkt. No. 1063 at 68-69.

---

[15] The severability provision reads in full:

> Should any provision in this Plan be determined to be
> unenforceable, that determination will in no way limit
> or affect the enforceability and operative effect of
> any other provision of this Plan.   The Confirmation
> Order shall constitute a judicial determination and
> shall provide that each term and provision of this
> Plan, as it may have been altered or interpreted in
> accordance with the foregoing, is valid and
> enforceable pursuant to its terms.

The appellants' views of what was at issue in their appeal before the Fourth Circuit are disingenuous. The Fourth Circuit clearly defined the appeal as one addressing "the circumstances under which a bankruptcy court may approve nondebtor release, injunction and exculpation provisions as part of a final plan of reorganization under Chapter 11 of the Bankruptcy Code." Behrmann, 663 F.3d at 706 (emphasis added); see also id. at 710 (concluding that "the bankruptcy court erred in entering an order approving the Release Provisions as part of the Confirmed Plan, and the district court erred in affirming that order insofar as it included the Release Provisions" (emphasis added)); id. at 713 (reasoning that "[b]ecause the present record does not allow us to assess . . . whether NHF's circumstances entitle it to the benefit of the Release Provisions, we must vacate the district court's judgment and remand the case to allow the bankruptcy court . . . to set forth specific factual findings supporting its conclusions"). As observed by the bankruptcy court and argued by NHF, the Fourth Circuit expressly acknowledged that under the Plan's severability clause, the infirmity or unenforceability of any one provision did not affect the viability of any other provision. Id. at 714.

Given the language of the Fourth Circuit's decision alone, it is clear that the bankruptcy court correctly found that only two portions of the Confirmation Order, the Release and Exculpation provisions, had been vacated. Moreover, because it is uncontested that only those two provisions were challenged by the Behrmanns on appeal, appellants' argument that the Fourth Circuit's decision somehow vacated the entire Confirmation Order is clearly meritless. It is also clear that vacatur of the Confirmation Order as to these two provisions had no effect on the enforceability of the Discharge Provision, given the Plan's severability clause.

Moreover, after the case had been remanded to the bankruptcy court, the Behrmanns requested that the bankruptcy court vacate the entire Confirmation Order. If the Behrmanns had honestly believed that the Fourth Circuit had, in fact, vacated the entire Plan and the Confirmation Order, such a request would have been meaningless. Filing that motion clearly establishes that appellants had actual knowledge of a valid order of the bankruptcy court – the Confirmation Order. When the bankruptcy court denied their motion to vacate that order, that decision made it even clearer that the Confirmation Order was operative.

Even if it had been reasonable for appellants to believe that the Fourth Circuit had somehow vacated the entire Confirmation Order, including the Discharge Provision, the bankruptcy court properly reasoned that the automatic stay imposed under 11 U.S.C. § 362(a) would still have been applicable and appellants would not have been entitled to file claims against NHF without seeking permission to lift the stay. Contempt Order at 26-27.  Under § 362(a), NHF's voluntary petition "operate[d] as a stay, applicable to all entities, of the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case."  11 U.S.C. § 362(a)(1).  The bankruptcy court found it "inarguabl[e]" that NHF was still in bankruptcy when the Fourth Circuit remanded the matter; accordingly, the automatic stay remained in full force and effect, notwithstanding the "uncertain" status of the Confirmation Order.  Contempt Order at 26-27.

Miller argues that the bankruptcy court's finding that the automatic stay precluded the filing of the Original Complaint is "hindsight analysis" and a "last ditch effort to justify its actions" that deprived appellants of "sufficient notice of this allegation or an opportunity to respond, all of which are

required under the law."  Miller Br. at 22-23.  At oral argument
before the Court, Merrick also repeatedly asserted that this was
"not a [section] 362 case."

Appellants' argument is meritless.  Simply put, every
bankruptcy case is a "362 case."  See, e.g., In re Gordon
Properties, LLC, 460 B.R. 681, 699 (Bankr. E.D. Va. 2011)
(stating that "[o]ne cardinal rule of bankruptcy practitioners
is, if there is doubt as to whether the automatic stay applies,
file a motion").  And notwithstanding their more recent
position, the Behrmanns acknowledged as much in the course of
this litigation when they requested – and received – leave of
the bankruptcy court to lift the stay so that they could file a
civil action in this district in November 2009, while their
appeal of the Confirmation Order was pending.  That request
unequivocally demonstrates that the Behrmanns and their counsel
knew that the bankruptcy court's permission was required before
they could begin litigation against NHF in any other court.[16]

The determinations that filing the Original Complaint
violated the plain language of an enforceable Confirmation Order

---

[16] The Proposed Second Amended Complaint also includes an
explicit reference to the automatic stay.  See Proposed Second
Amended Complaint at ¶ 19 ("NHF and the Houk Defendants
consented to Motion and Order granting the commercial lender
relief from the automatic stay contained in 11 U.S.C. §362(a) to
enable the commercial lender to appropriate and confiscate
Founders' contributions to their Foundations.").

as well as the automatic stay and that appellants knew or should have known that they were in violation of the Confirmation Order and the automatic stay when they filed the Original Complaint without leave from the bankruptcy court were sound, and these elements of civil contempt are therefore satisfied.

### b. Filing of the Amended Complaint

The bankruptcy court found that appellants' filing the Amended Complaint violated the August 27, 2012, Reinstatement Order (reinstating the Exculpation Provision), as well as its Confirmation Order (containing the Discharge Provision) and 11 U.S.C. § 1141(d)(1). Contempt Order at 22-24, 27-32.

The Exculpation Provision of the Plan provides that NHF and the Houk family (as officers and directors of NHF)

> shall have no liability to any of the Releasing Parties . . . for any act taken or omission made in connection with, or arising out of, the Bankruptcy Case, the Disclosure Statement, this Plan or the formulation, negotiation, preparation, dissemination, implementation or the administration of this Plan, any instrument or agreement created or entered into in connection with this Plan, any other act taken or omitted to be taken in connection with, or in contemplation of, any of the restructuring or other transactions contemplated by this Plan, and the property to be distributed or otherwise transferred under this Plan; unless such person obtains the prior approval of the Bankruptcy Court to bring such a claim.

Bankr. Dkt. No. 665. The Exculpation Provision precludes the Behrmanns from bringing claims against NHF and the Houk family that "aris[e] out of[] the Bankruptcy Case" (that is, claims for

misconduct occurring between the date NHF filed for bankruptcy
protection in January 2009 and confirmation of the Plan in
October 2009) without first obtaining permission from the
bankruptcy court.

Although the Amended Complaint contains certain language
attempting to "disclaim" the claims that would be barred by
either the Exculpation or Discharge provisions of the Plan,[17]
that language does not absolve them of contempt.
The Amended Complaint also states that the Behrmanns, "in their
individual capacities, are not bringing [these claims] against
NHF for conduct that pre-dates July 1, 2010," which was the
effective date of the Behrmanns' settlement agreement with NHF.
Id. at ¶¶ 49, 186, 216, 223, 232, 239.

Notwithstanding the disclaimer language, the bankruptcy
court correctly found that the Amended Complaint was "replete"
with allegations relating to NHF's conduct that did pre-date
both July 1, 2010, and the date the Confirmation Order was

---

[17] The Amended Complaint states that

> [n]one of the Plaintiffs are bringing this claim
> against NHF or the Houk Defendants for the period of
> January 24, 2009 through October 16, 2009 (the
> reorganization period), until the bankruptcy court,
> this Court, or a competent Court of Appeals,
> authorizes such action, at which point, this claim
> shall be deemed pursued.

Amended Complaint at ¶¶ 135-50; see also ¶¶ 194, 202.

entered, and which arose out of NHF's conduct during the bankruptcy proceedings, all in violation of the Confirmation Order. Contempt Order at 9-11. From this finding, the court concluded that the Amended Complaint was "an attempt to collect on a pre-petition and pre-confirmation debt" against NHF and that there were "no allegations in the Amended Complaint that the Behrmanns or their Assignors were harmed by the Debtor, post-confirmation, at all"; rather, "the entirety of the claimed harm to the Behrmanns is alleged to have occurred well before the bankruptcy filing, or during the course of the bankruptcy case (where, it must be remembered, they ultimately withdrew their claim)." Id. at 10-11.

Citing to a section in the Amended Complaint actually titled "Specific Facts Involving Bankruptcy Fraud," the court also found that the Amended Complaint "unquestionably includes Exculpated claims," again notwithstanding the disclaimer language. Id. at 9-11, 22; see Amended Complaint at ¶¶ 135-50. Indeed, the bankruptcy court found that the Amended Complaint contained only four allegations based on post-confirmation conduct. Contempt Order at 11; Amended Complaint at ¶¶ 9, 156-58 (alleging that in late 2010 and 2011, the Houk family transferred funds from NHF to two new charitable organizations).

41

Further, the bankruptcy court found no support for appellants' argument that alleging post-confirmation continuation of a RICO enterprise was permissible under the Discharge Provision and rejected appellants' contention that the disclaimer language avoids a finding of contempt because the "allegations are in the Amended Complaint precisely because [appellants] intend to present evidence of the same to the jury." Contempt Order at 28-30.

Lastly, the court correctly found that the Amended Complaint was filed without leave several months after reinstatement of the Exculpation Provision, a decision that has not been appealed. Id. at 22. Given the Amended Complaint's inclusion of "unquestionably" exculpated claims against the Houk family (as well as discharged claims against NHF), filing those claims without leave of the bankruptcy court after the court reinstated the Exculpation Provision was in "direct violation" of the Confirmation and Reinstatement orders, and filing claims against NHF which had been discharged clearly violated the Confirmation Order. Id. at 22-23, 27-28.

The Behrmanns argue that references in the Amended Complaint to the Houk family's conduct during the bankruptcy proceedings are distinguishable from claims based on that conduct. Behrmanns Br. at 11-13; see also Miller Br. at 23-29;

42

Schendzielos Br. at 20-22.   Miller goes on to argue that because
the Amended Complaint alleges a RICO enterprise, under Federal
Rule of Civil Procedure 9, the Behrmanns were required to plead
their bankruptcy fraud claims against the other defendants named
in the Amended Complaint, as well as those defendants'
relationship to the Houk family, with specificity.   Miller Br.
at 25-27.   What the appellants have totally failed to explain is
why they did not seek permission from the bankruptcy court to
lift the automatic stay or to be released from the requirement
of the Exculpation Provision before they filed the Amended
Complaint.

     The bankruptcy court's findings that the allegations in the
Amended Complaint clearly involved pre-petition conduct as well
as conduct during the bankruptcy proceedings are sound.   The
court was fully justified in rejecting appellants' attempts to
"plead around" the Exculpation Provision and to explain away the
overwhelming number of post-petition, pre-confirmation
allegations leveled at the Houk family and NHF.

     In sum, the bankruptcy court correctly concluded that the
claims asserted in the Amended Complaint against the Houk family
and NHF are barred by the Exculpation and Discharge provisions
of the valid Confirmation Order, and that the record
demonstrates that appellants knew that the Amended Complaint was

filed in violation of that order as well as the Reinstatement Order.[18]  In fact, the inclusion of the disclaimer language in the Amended Complaint is conclusive proof that appellants knew that many of their allegations as to the Houk family and NHF were in violation of the bankruptcy court's orders. Accordingly, the bankruptcy court's finding that appellants violated the two valid Confirmation and Reinstatement orders by filing the Amended Complaint was correct, as was the conclusion that appellants knew that the claims included in the Amended Complaint violated the bankruptcy court's orders.

### c. Harm to NHF

Lastly, the bankruptcy court found that NHF was harmed by appellants' filing the Original and Amended complaints and then refusing to dismiss NHF from them, putting NHF to the expense of having to file its Motion for Contempt to secure the dismissal to which it was entitled.  Contempt Order at 32-33 ("[NHF] should not have had to litigate a two-day contempt hearing

---

[18] Although the bankruptcy court did not cite appellants for an additional violation of the automatic stay, that violation also occurred.  To find otherwise – as appellants argue in their appeal of the bankruptcy court's Order as to the Original Complaint – would jeopardize the efficacy of bankruptcy proceedings, which the automatic stay is designed to protect.

before this Court to gain that result [dismissal of the claims against NHF].").[19]

Appellants argue that NHF and the Houk family have suffered no harm as a result of the filing of the Original Complaint because neither NHF nor the Houk family were required to defend against it; indeed, NHF and the Houk family did not even know about the California litigation until appellants filed and served the "superseding" Amended Complaint, a full year after filing the Original Complaint.  Behrmanns Br. at 10-11; Miller Br. at 17-19.

NHF responds that "[e]very day that NHF remained a defendant in the California Action was a continuing violation of its legal rights."  NHF Br. at 34-35.  Consequently, "[e]very dime in legal fees that NHF spent to obtain dismissal of the improper claims constituted harm that it would not have suffered absent Appellants' violations of the Bankruptcy Court's orders."  Id.  To cure the violation, NHF was obligated to incur extensive

---

[19] Appellants later dismissed the claims in the California litigation that the bankruptcy court determined were impermissible.  See Behrmanns Br. at 7; Miller's Br. at 38 (asking the Court to take judicial notice that "the motion to lift the California stay and dismiss the claims at issue was made on August 19, 2013"); Schendzielos Br. at 9 ("The California Federal Action has been stayed since [February 6, 2013] but for a momentary lifting to enter further orders regarding the dismissal of certain claims because of the [appellants'] actions taken under the cannon of the Bankruptcy Court's contempt order").

legal expenses to seek relief from the bankruptcy court and, at
the same time, guard against harm in the California action.  Id.
at 36.

The record clearly demonstrates a continuous pattern of
non-compliance with the bankruptcy court's orders, as well as
flagrant violations of the automatic stay, that is sufficient to
establish harm to NHF's right to be protected from suit while in
bankruptcy proceedings.  Appellants conduct also harmed the
integrity of the bankruptcy court and judicial proceedings.  See
Tattoo Art, Inc. v. Tat Int'l, LLC, Civil Action No. 2:10CV323,
2012 WL 3912572, at *5 (E.D. Va. Sept. 7, 2012) (stating that
"because this is an action for contempt of court, not only the
Plaintiff but also the judicial system suffers harm as a result
of non-compliance"); Omega World Travel, Inc. v. Omega Travel,
Inc., 710 F.Supp. 169, 171 (E.D. Va. 1989) aff'd sub nom. Omega
World Travel, Inc. v. Omega Travel & Shipping Agencies, Inc.,
905 F.2d 1530 (4th Cir. 1990) (stating that "the system as well
as the movant was harmed by World's neglect of its obligations
under the consent decree").  When the bankruptcy court issued
the Contempt Order in June 2013, appellants had been in
violation of the Confirmation Order since June 12, 2012, when
they filed the Amended Complaint.  That year-long violation

alone is more than sufficient to find harm to both NHF and the judicial system.  Omega, 710 F. Supp. at 171-72.

Because all the elements of civil contempt were properly found by the bankruptcy court, the next issue is whether the bankruptcy court abused its discretion in imposing sanctions for appellants' contempt and fashioning relief for NHF.

### d. Relief

To purge their contempt, the bankruptcy court required appellants to (1) dismiss with prejudice all claims against NHF in the California action; (2) move to further amend the Amended Complaint in the California action to dismiss with prejudice all exculpated claims against the Houk family; and (3) pay NHF $278,098.53 in attorney's fees and costs, all within 10 days of the issuance of the Contempt Order.  Contempt Order at 39-40. The Contempt Order provided that if the appellants failed to comply with the dismissal and amendment provisions of the Order within 10 days, they would be fined $500.00 a day for each provision of the Confirmation Order violated (for a total of $1,000.00 a day), also payable to NHF.  Id.[20]  The bankruptcy court denied NHF's request for punitive damages.  Id. at 40.

---

[20] NHF initially asked for $688,172 in attorney's fees and punitive damages.  The attorney's fees award was reduced and the request for punitive damages was denied.  Contempt Order at 33-38.

i. <u>Dismissal of NHF and the Exculpated Claims from the California Action</u>

The Behrmanns argue that the bankruptcy court erred in ordering them to dismiss their post-confirmation claims against NHF because the bankruptcy court's jurisdiction does not extend to "striking the claims against a reorganized debtor for acts or omissions occurring in the post-confirmation period." Behrmanns Br. at 15-16; Schendzielos Br. at 24. Miller and Schendzielos argue that they cannot be required to dismiss any of the Behrmanns' claims in the California action without their clients' consent, because if they complied, their clients could sue them for malpractice and they could be liable to the California bar for sanctions. Miller Br. at 35-36; Schendzielos Br. at 25-28. In addition, Miller argues that complying with the Contempt Order would adversely affect the Behrmanns' right to appeal, "as purging the contempt has the potential to render a clients' appeal moot." [21] Miller Br. at 36.

---

[21] Miller and Schendzielos also argue that the bankruptcy court's Order requiring dismissal of any claims based on pre-confirmation conduct against NHF violates the due process rights of the assignors, given their purported lack of notice of the bankruptcy proceedings. Miller Br. at 29-34; Schendzielos Br. at 29-31. This argument is patently frivolous given the evidence in the record that all of the assignors received notice of the bankruptcy proceedings. <u>See</u> Bankr. Dkt. No. 148. Further, the bankruptcy court took notice that appellants did not offer as evidence during the evidentiary hearing "Declaration[s] or Affidavits from the Assignors" stating that

NHF responds that the court did not abuse its discretion by ordering appellants to dismiss the Behrmanns' claims against it and the Houk family.  NHF Br. at 36-44.  First, NHF argues that Miller and Schendzielos's argument that without their clients' consent they were somehow powerless to purge their contempt by moving for a dismissal of the claims against NHF and the Houk family "makes no sense," because they both acknowledge that they have finally, in fact, complied with that provision of the Contempt Order.  Id. at 37.  NHF also points out that neither Miller nor Schendzielos asserts that the Behrmanns actually refused to consent to dismissal – making any ethical "quandary" they may have found themselves in "hypothetical."  Id.

"The appropriate remedy for civil contempt is within the court's broad discretion."  General Motors, 61 F.3d at 259 (4th Cir. 1995) (citing McComb, 336 U.S. at 192).  "[R]emedies and sanctions must be remedial and compensatory and, unlike criminal contempt, nonpunitive."  Id.  The Fourth Circuit has seen "no reason to read into [section 105] anything other than its plain meaning that a court of bankruptcy has authority to issue any order necessary or appropriate to carry out the provisions of the bankruptcy code."  In re Walters, 868 F.2d at 669.

---

they did not receive notice of the bankruptcy proceedings.  Dkt. No. 1241 at 8.

The Behrmanns and their counsel were on clear notice of the
bankruptcy court's orders and were given an early opportunity to
avoid sanctions by promptly dismissing the offending claims from
the California action.  By unreasonably refusing to dismiss
those claims, and instead insisting on conducting discovery
before the contempt hearing, the Behrmanns and their counsel
caused NHF significant, unnecessary litigation expense.  Miller
and Schendzielos's arguments as to needing the Behrmanns'
consent to dismiss the offending claims are frivolous.  An
attorney cannot violate court orders simply because his client
withholds consent to compliance with those orders.  To allow
that excuse to justify non-compliance would turn the judicial
system on its head and undermine (if not destroy) the bankruptcy
court's ability to "carry out the provisions of the bankruptcy
code."  As officers of the bankruptcy court,[22] Miller and
Schendzielos were obligated to comply with its orders and to
advise their clients accordingly.  And if the Behrmanns refused
their consent to comply with an order, Miller and Schendzielos
were, as the bankruptcy court suggested, obliged to withdraw

---

[22] Merrick and Schendzielos were admitted to practice before the
bankruptcy court pro hac vice on September 15, 2009.  See Bankr.
Dkt. No. 621.  Miller was admitted pro hac vice on January 23,
2014.  See Bankr. Dkt. No. 1295.

from representing them.   That this particular alternative may be
unpalatable to appellants is irrelevant.

For all these reasons, the bankruptcy court's requirement
that all the claims asserted against NHF and the Houk family in
the California action be dismissed was not an abuse of its
discretion.

### ii.   Attorney's Fees

In addition to requiring dismissal of the offending claims,
the bankruptcy court awarded NHF $278,098.53 in attorney's fees
and costs.   Appellants do not explicitly challenge the
bankruptcy court's findings as to NHF's counsel's hourly rates
or the ultimate calculation of the attorney's fees award.[23]
Rather, appellants' primary argument is a "broadside" challenge
to the award of any attorney's fees.   Specifically, the
Behrmanns argue that the attorney's fees incurred by NHF and
awarded by the bankruptcy court were not caused by any

---

[23] Miller argues that although NHF "submitted their fee
statements, and had an expert testify that their rates were
consistent with what other practitioners charged, they failed to
present any evidence that their fees were necessary to achieve
the desired result" or "any evidence of mitigation."   Miller Br.
at 39-40; see also Schendzielos Br. at 31-33.   This argument
completely ignores the bankruptcy court's careful consideration
of all the evidence presented at the evidentiary hearing on this
issue, including mitigation evidence.   See Contempt Order at 33-
38.   Moreover, appellants' mere argument that the bankruptcy
court erred in its findings as to the attorney's fees award is
insufficient, without more, to show that the bankruptcy court's
award was an abuse of discretion.

contemptuous conduct attributable to them, but resulted from appellee's counsel's failure to make "[a] few telephone calls" and engage in "open and candid communication and idea exchange," which was "all that was required."[24]  Behrmanns Br. at 17.  The Behrmanns argue that by not taking this "rational approach," NHF failed to mitigate any harm it may have suffered from the filing of the California action, and, therefore, that the bankruptcy court's award of attorney's fees is unjustified and should be reversed.  Id.  Rather than blaming NHF's counsel, Miller shifts the blame to the bankruptcy court by contending that NHF would not have incurred substantial attorney's fees and costs if the court had simply "instructed Appellants that the claims at issue should be dismissed immediately."  Miller Br. at 38-39; see also Schendzielos Br. at 22-24.

NHF responds that awarding attorney's fees was not an abuse of discretion because the bankruptcy court found appellants' conduct to be willful, and that NHF had been harmed by the California action.  NHF Br. at 44-46.  Moreover, appellants

---

[24] The Behrmanns also argue that the bankruptcy court did not make a finding that their conduct was "willful," and therefore erred in awarding attorney's fees against them.  Behrmanns Br. at 16.  The Behrmanns argument is baseless because the bankruptcy court actually did find that their conduct was "willful," Contempt Order at 38 ("On balance, while the Court finds that the conduct of [appellants] was willful . . ."), even though "[w]illfulness is not an element of civil contempt." General Motors, 61 F.3d at 258.

could have avoided the attorney's fees award by promptly dismissing the California action when the bankruptcy court issued its Order to Show Cause in December 2012. Id. As to the argument that NHF's Motion for Contempt "could (and should) have been resolved with a few telephone calls, a few e-mails, and perhaps some amended filings," NHF points out that the bankruptcy court's opinion specifically recounts NHF's numerous, unsuccessful attempts by phone and e-mail to seek dismissal before it filed its Motion for Contempt. Id. at 47-48.

This Court fully agrees with NHF and the bankruptcy court that it was appellants - not NHF - who increased the cost of litigating the Motion for Contempt and the Order to Show Cause by opposing the motion and moving for a two-month continuance of the evidentiary hearing. Had appellants promptly dismissed the offending claims in the California action, none of the costs of discovery, brief writing, and participation in a two-day evidentiary hearing would have been incurred.

On this record it is clear that the bankruptcy court did not abuse its discretion in finding the appellants in contempt and awarding reasonable attorney's fees of $250,000 and $28,098.53 in costs to the appellees. In making its award, the bankruptcy court properly considered the 12 factors required under Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 (4th Cir.

1978),[25] and also correctly found that it was appellants' motion to continue the evidentiary hearing for two months and their decision to conduct discovery – including expert discovery – in preparation for the hearing that added significantly to the costs and fees NHF incurred in early 2013.  Further, just as there is no question as to the appellants' ongoing pattern of contempt, there is no question that NHF began its attempts to mitigate the harm caused by the California action as soon as it learned of the suit in October 2012, more than six months before the evidentiary hearing.  Appellants' continued pattern of knowing non-compliance with the bankruptcy court's orders resulted in harm to NHF and the Houk family that appellants were always in the best position to remedy, which they could have done at any time simply by complying with the bankruptcy court's orders.

---

[25] The factors include: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.  Barber, 577 F.2d at 226 n.28.

For all these reasons, the Court finds that the bankruptcy court's order awarding $278,098.53 in attorney's fees and costs to NHF, jointly and severally payable by appellants, was not an abuse of its discretion.

### iii. Fines

Miller argues that subjecting appellants to a $1,000 per-day fine for failure to comply with the Contempt Order rises to the level of a criminal penalty, which in turn triggers certain protections that appellants were not afforded, including "notice of the intent to seek criminal sanctions, the right to a jury trial on the issues of contempt," and the opportunity "to present evidence that would have negated the element of intent necessary to reach a criminal contempt finding." Miller Br. at 37-38.

A reviewing court must decide for itself whether a contempt sanction was criminal or civil, regardless of how it was labeled by the sanctioning court. Cromer v. Kraft Foods N. Am., Inc., 390 F.3d 812, 821 (4th Cir. 2004). "[P]utatively civil contempt sanctions will be held to be criminal sanctions in cases when the fines were 'not conditioned on compliance with a court order,' 'not tailored to compensate the complaining party,' but instead 'initiated to vindicate the authority of the court and to punish the actions of the alleged contemnor[ ].'" Id. at 822

(quoting Bradley v. Am. Household, Inc., 378 F.3d 373, 377 (4th Cir. 2004)); see also Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 828 (1994).

Here, only the threat of fines was imposed on appellants because under the plain language of the Contempt Order, if appellants timely complied, no fines would be imposed. See Contempt Order at 39 ("Should [appellants] fail to [dismiss with prejudice the California federal action against NHF], the Court hereby imposes a daily fine in the amount of $500 per day. . . . If the [appellants] fail to comply with this requirement, the Court hereby imposes a daily fine in the amount of $500 per day."). Appellants' ability to purge their contempt is sufficient to support a finding that any fines imposed by the bankruptcy court would be "civil," and not "criminal." See Bagwell, 512 U.S. at 829 ("Where a fine is not compensatory, it is civil only if the contemnor is afforded an opportunity to purge.").

Accordingly, the Court finds that the bankruptcy court held appellants in civil and not criminal contempt. For that reason, and the reasons discussed above, the bankruptcy court's imposition of daily fines for non-compliance with the Contempt Order was not an abuse of its discretion.

III.   NHF'S MOTION FOR SANCTIONS

NHF has moved for sanctions against appellants under
Federal Rule of Bankruptcy Procedure 8020, arguing that the
appeals presently before the Court are frivolous as argued.

### A. Standard of Review

Federal Rule of Bankruptcy Procedure 8020 provides that
"[i]f a district court . . . determines that an appeal from an
order . . . of a bankruptcy judge is frivolous, it may, after a
separately filed motion . . . award just damages and single or
double costs to the appellee."   Fed. R. Bankr. P. 8020.
"Because the language of Bankr[uptcy] Rule 8020 is materially
identical to Fed. R. App. P. 38, the sanctions provision for the
filing of frivolous appeals in the Court of Appeals, the
standard for imposing sanctions is similar."   In re Prop.
Movers, L.L.C., 31 F. App'x 81, 83 (4th Cir. 2002) (citing
Pettey v. Belanger, 232 B.R. 543, 548 (D. Mass. 1999)).

A court considering a motion for sanctions for the filing
of a frivolous appeal must "first determine that the appeal is
frivolous, and then determine that this is an appropriate case
for the imposition of sanctions."   In re Prop. Movers, 31 F.
App'x at 84 (citing Williams v. United States Postal Service,
873 F.2d 1069, 1075 (7th Cir. 1989)). An appeal is frivolous
where "the result is obvious or when the appellant's argument is
wholly without merit."   Id. (internal quotation marks omitted).

A finding of frivolity is appropriate where an appellant cites no relevant cases in response to a lower court's accurate exposition of the law, and where an appellant's arguments are irrelevant to the issues in dispute.  Id.

It is particularly appropriate to hold not only the appellant, but also his attorney, liable for a sanctions award when the frivolity of an appeal is premised not only on the filing of the appeal but also on the type of arguments used to support it.  Dungaree Realty, Inc. v. United States, 30 F.3d 122, 124-25 (Fed. Cir. 1994).  Sanctions for the filing of a frivolous appeal are appropriate because "they compensate the prevailing party for the expense of having to defend a wholly meritless appeal, and by deterring frivolity, they preserve the appellate calendar for cases truly worthy of consideration."  Id. at 125 (internal quotation marks omitted).

### B. Analysis

NHF asserts that many of appellants' arguments, including that the Fourth Circuit vacated the entire Confirmation Order; that the disclaimer language in the Amended Complaint turned their exculpated and discharged claims against the Houk Family and NHF into "mere allegations" of pre-confirmation conduct; that their ongoing violation of the bankruptcy court's orders did not cause NHF any harm; that the Contempt Order imposed criminal, rather than civil, penalties; and that the contempt

proceedings deprived appellants and the assignors of due process, are meritless.  National Heritage Foundation, Inc.'s Brief in Support of its Motion for Sanctions Under Federal Rule of Bankruptcy Procedure 8020 ("Motion for Sanctions") at 5-14.

In response, appellants contend that their arguments in these appeals are not only valid, but made in good faith.  See Omnibus Response in Opposition to "National Heritage Foundation, Inc.'s Motion for Sanctions Under Federal Rule of Bankruptcy Procedure 8020" and Cross-Motion for Sanctions at 3-19.[26]

The Court finds that sanctions for many of the arguments made by appellants would indeed be appropriate.  In particular, and as explained above, appellants' arguments as to the effect of the Discharge Provision in the Confirmation Order following remand from the Fourth Circuit, as well as their arguments as to the harm caused by appellants' ongoing violations of the Confirmation Order, the lack of due process in the contempt proceedings, the purportedly criminal nature of the Contempt Order, and the purported application of the Noerr-Pennington doctrine, are so lacking in merit as to be frivolous.

Having determined that many of the arguments in these appeals are frivolous, the Court also finds that this is not an

---

[26] Appellants have cross-moved for sanctions against NHF for its "manifestly unwarranted pursuit of Rule 8020 sanctions."  Opp. at 20-22.  For the reasons stated above, that motion will be denied.

appropriate case for the imposition of sanctions at this time. See In re Prop. Movers, 31 F. App'x at 84.  First, the sanctions imposed by the bankruptcy court should be sufficient to remedy the harm caused by appellants' contempt and fairly compensate NHF for the reasonable expenses incurred in achieving a dismissal of the improperly filed claims in the California action.

Second, this litigation is now in its fifth year, and it has been nearly four years since the Behrmanns "settled" their claim against NHF.  Imposing further sanctions may, unfortunately, simply encourage rather than deter additional litigation in a matter that should have been resolved years ago. Of particular concern is the extraordinarily aggressive and far-ranging nature of this litigation, as well as the Behrmanns' apparent insistence on pursuing claims regardless of the costs of that pursuit, to themselves or others.

For all these reasons, NHF's Motion for Sanctions will be denied without prejudice.  Should appellants pursue any another frivolous appeals, sanctions will be imposed for that appeal and the instant motion for sanctions will be reconsidered.

## IV.   CONCLUSION

For the reasons stated above, the bankruptcy court's decisions will be AFFIRMED, NHF's Motion for Sanctions will be

DENIED WITHOUT PREJUDICE, and appellants' Cross-Motion for Sanctions will be DENIED by an order to be issued with this Memorandum Opinion.

Entered this 5 day of May, 2014.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge